Mathews, J.
delivered the opinion of the conrt. The pleadings, as they appear on the re. cord, present a contest for decision arising in lo-, catione ofieris mercium vehendarum or contract of hiring of the carriage of goods : and the principal question relates to the liability of carriers, according to our laws on the subject of this species of bailment.
The petition is in the usual form, and the plaintiff claims damages to the amount of the value of certain goods and merchandize, contained in boxes and packages, which were placed by him on board of the steam boat Vesuvius, then lying in the port of New-Orleans, to be carried to Natchez. He states that the goods were not delivered according to contract, but were lost and destroyed by fire, on board of said boat, in consequence of the negligence and misconduct of th§ master and those employed under him.
Before a discussion of the merits of the case, *677 it is necessarv to dispose of a bill of exceptions * 1 * taken by the plaintiff’s counsel to the opinion of the district court, in denying him the priviledge of discontinuing his suit ; after the trial had began and the evidence was closed, but before the case was finally submitted to the court for decision.
If the introduction of the trial by jury, in our system of jurisprudence, necessarily brings with jt all the rules of the common law of lingland, on that subject, it is clear, that a plaintiff may, at any time, before the verdict of the jury is recorded, suffer a non suit. This practice which at first originated in the liability of plaintiffs to be amerced, when they failed in their suits, at the discretion of the king pro J,also clamare, since the disuse of amercements, has been continued for their benefit, in cases in which they suppose, that sufficient evidence has not been given to maintain their claims. Admitting that this must be an inevitable consequence of the trial by jury, it does not appear to us, that an absurd inconsistency in practice, should be exhibited should a different rule prevail in cases, submitted entirely to a court, competent to judge them both as to law and fact, wherein the discontinuance should be left to the discretion of the court. Issues of fact are not, in our system of practice, necessarily to be tried by a jury : their *678 trla^ *u ^lat vvay> depends on the option of eh ther party : and, as by the choice of a defendant, a plaintiff may have his case submitted to judges whom he would not choose, there is no palpable absurdity in allowing the opportunity, by suffering a non-suit, to renew his action, in order to have it submitted to a court or a different jury. But, even should an apparent contradiction exist in practice, as it relates to the different modes of trial, by the court or a jury, arising from the various codes from which our jurisprudence is formed, it is not for us to correct it In a former case, decided in this court, we have said that, after the commencement of the trial of a cause, it was discretionary with the court before whom it is pending to permit or not a discontinuance, and we see no reason, now, to alter this opinion. 5 Martin, 20. The Spanish law provides that, after a contestatio litis, the plaintiff cannot discontinue or change his action ad libitum. Febrero, Cinco Juicios, 2, 3, 1, n. 219.
The power exercised by courts of justice of allowing or refusing to plaintiffs leave to discontinue their actions, ought (like all their other powers) be used and directed by a sound and legal discretion, according' to the particular circumstances of each case. Why should a plaintiff, after having harrassed a defendant by bringing him into court and compelled him, with great expense *679 to enter into his defence, be permitted to dismiss , . . - ,. . , , ~ his action at any time belore judgment r Uur laws and the practice of the courts under them, give great latitude, for the amendment of pleadings : continuances are obtained with facility, so as to allow the parties in an action to come fully prepared to trial, and prevent as much as possible, surprise and injustice, and when neither is likely to take place, no error or want of proper discretion can be attributed to a decision, which denies leave to discontinue. Whether injustice will probably be the result of such a denial, may be most clearly discovered after hearing all the evidence, as in the present case, under the circumstances of which, as they appear to us, we are of opinion, that the district court did not err in refusing leave to discontinue.
The attempt of the plaintiff’s counsel, to discontinue his action, seerns to have arisen from, an apprehension, that they had failed in proving sufficiently the delivery and value of the goods, although in argument, they insist strongly on the fullness and legality of the proof. Whether the evidence would or would not in this respect, authorise and support a judgment in favor of the plaintiff, this court will not inquire, bedng of opinion that, under all the circumstances of the case, even admitting full proof of the delivery and va- *680 jue 0f the g-oocls to have been made, the defend- ° ants are not liable for the loss of the property which was destroyed by the burning of the boat,
In examining the responsibility of a carrier for hire, he must be considered as a bailee of goods for the purposes expressed in the contract and liable under it, according to the common import and meaning of such a contract, where no* thing is expressed, which creates an increase of obligation : and, here we may lay aside all the doctrine on the subject, as inapplicable, which proceeds from the principle of holding common carriers responsible like insurers. Considered simply, as bailees on a contract of hiring of carriage, they are answerable for ordinary neglect, which is the omission of that care, which every man of common prudence, and capable of governing a family takes of his own concerns. This is a definition and rule laid down, by Sir William Jones, as founded on the plain elements of natural law, and the principles contained in the codes of different nations, on this branch of jurisprudence, which we believe, to be in conformi ty with the provision of our own laws on this sub - ject.
Our statute provides that, “carriers and wa-termen may be liable for the loss or damage of things, entrusted to their care, unless they can prove such loss or damage has been occasioned *681 by accidental or uncontroiable events. Civ. Code ’ • 384, art. 63. lhe rrenca text has the words cas fortuit ou force mojeure. By another article they are subjected to the same obligations and duties, which are imposed on tavern keepers, art. 61. These are made responsible for thefts and damage done to the goods deposited with them, whether they occur by the acts of their servants or persons who frequent the tavern : they are not answerable for robbery, nor where the theft is committed after breaking open the ou.er door, or by any other extraordinary violence. This clause seems to relate solely to thefts of property, deposited with an inkeeper, and we cannot perceive its applicability to the present case, although relied on by the counsel of the plaintiff.
The rule, by which the responsibility of carriers for loss or damage is to be ascertained, is found in the part of the code just cited. They are excused by accident, or overpowering force, Gas fortuit ou force majeure, wherever the first does not occur by their negligence, and they do not unnecessarily go in the way of the latter.—in other words, if they have used that due diligence in the performance of the contract, which the nature of their situation requires. It appears, by the expressions of the code, that the accident or overpowering force must be proven by the car- *682 r}er jn order to excuse his failure to perform his undertaking, according to agreement. Incases., where the loss or damage arises from occurrences entirely beyond the control of the carrier, such as an attack by the public enemy, a storm or tempest, it is enough for him to prove the fact, and he who claims compensation for the loss is to prove the fault or misconduct of the carrier, in order to recover against him. But, in those cases. which are not readily supposed to happen, without negligence, such as a loss by robber}7, fire, &c. the carrier is bound to shew, that they happened without any fault or negligence on his part, which, being a negative proposition, can only be established by evidence of the ordinary care and attention, usually given by diligent men on like occasions. Curia Philipica, 509, art. 31,
This rule gives to the plaintiff the advantage of implied or presumptive evidence of negligence, on the part of the masters and owners, which they are bound to disprove by shewing due diligence. How far they have succeeded in this, is to be ascertained by the evidence and circumstances of the case.
The plaintiff thought fit to place his goods on board of a steam boat, which, being propelled through the agency of fire, must from the nature of things, be more expressed to destruction by that element, than boats which are so by the ap *683 plication of ordinary powers. At the time when the boat was burnt, the agent of the owners (who has become one of them since the boat was repaired) was on board as well as the master. The usual number of men skilled in this sort of navigation were employed, in conducting the boat on the short trip made for the purpose of procuring wood, during which the accident happened* which destroyed the boat and cargo. We are clearly of opinion, that this trip of itself does not establish such a neglect, on the part of the master and agent, as will authorise a recovery against them or the owners. The circumstance under which it was undertaken, ar*d the occurrence, whilst it was in execution, are much relied on by the counsel for the plaintiff, as shewing what they term actual negligence, in leaving the port late, so that the boat would probably be in the night on her return, and suffering her to get aground, whilst the hands were getting in the wood.
As to the time of day, in which the trip was begun, it may be observed, that all masters of steam boats, are in the constant habit of running them by night, whenever extraordinary darkness does not forbid it, and this appears to us a sufficient excuse for the conduct of the parties in the present case. The risk by fire, if there be any difference, is less by night than by day, because *684 its commencement in anv part of the boat would be more readily discovered in the dark. The circumstance of the boat being run aground, in , the slight degree, in which it appears fiom the evidence that she was, is one of these accidents which often happen, in this kind of navigation, in which the boats have so frequently to approach the shores of the river, for the purpose of getting wood ; and it ought not to be considered as proof of culpable negligence.
Ellery for tjie plaintiff. Livingston for the defendants.
It appears, from the wdiole tenor of the evidence on the part of the defendants, that the master, and ail his men on board, were in the actual performance of their respective duties, when the unfortunate event occurred, which involved the property of both the plaintiff and defendants in one common destruction, and that no negligence can be attributed to those who were concerned in the navigation of the boat, which was consumed together with her cargo. It is to the plaintiff damnum absque injuria.
It is, therefore, ordered, adjudged and decreed, that the judgment of the district court be affirmed with costs.